v. Xavier Becerra, Secretary, U.S. Department of Health and Human Services, Ms. Carol Freddy-Eppelant, Ms. Edwards Freddy-Eppelant. Good morning. This is Judge Wilkins. Ms. Carol, you may proceed. Good morning, Your Honors. May it please the Court. Kelly Carol on behalf of Appellant St. Helena Clear Lake Hospital. I would like to reserve two minutes for rebuttal. The question presented is whether the Secretary lawfully disallowed Medicare payment for the on-call costs that the hospital incurred to assure that specialist physicians are available to treat the hospital's Medicare inpatients. The answer is no for two basic reasons. First, the Secretary based the disallowance on a regulation that did not apply, while the Secretary ignored the regulation that does apply. Second, the applicable regulation requires the Secretary to pay the hospital's necessary and proper costs, and the undisputed factual record shows that the only way the hospital can have the specialty physicians necessary to serve its inpatients is by paying doctors for being on-call during set hours. This is because of the lack of available specialists in the rural and mountainous area where the hospital is located. Thus, we ask this Court to set aside the decision of the PRRB, find that these inpatient on-call costs must be reimbursed, and remand to the Secretary for calculation of the Medicare payments that are due. I welcome your questions, Your Honors, or I would be happy to provide additional detail on our arguments. Can you just start out by explaining if we disagree with you on the issue of whether either the California statute of regulation or the federal EMLAT, or I probably got the acronym wrong, that neither of those require the on-call physicians. We would sustain the Secretary's decision and wouldn't need to reach anything else, correct? Your Honor, in this case, the Secretary is required to conduct an analysis of whether the costs are necessary and proper, and the PRRB, standing in the shoes of the Secretary here, did not so conduct that analysis. To answer your question more directly, even if you were to find that those specific laws did not so require, the Secretary would still need to conduct an analysis of whether these on-call costs were necessary and proper. But here, of course, those laws do require that the hospital incur these costs to serve its inpatients. I'm a little confused. Did you abandon the notion that the California law requires the payment for on-call physicians in your opening statement? No, Your Honor. We absolutely did not. And forgive me if I implied that. We did not abandon that the California state law so requires. In fact, California... Can you show us where you found the requirement? Yes, Your Honor. So, it is the unique purview of states to license facilities and to license the practitioners and set forth standards of care for those practitioners in hospital facilities. And the controlling Medicare regulations, as I noted, require critical access hospitals and their staff to be in compliance with federal, state, and local laws and regulations. Those are the Medicare conditions of participation. Perhaps you'd point to the state statute, which you say requires on-call physicians for inpatient. Your Honor, for example, California licensing laws require hospitals to provide 24-hour inpatient care, including surgical and other physician-provided services. There's Section 7 California Code of Regulations, Title 22, Section 70005. What language are you referring to? If I may get my binder. 70001 states that essential services required by law for licensure as a hospital must include surgical services. 70005A requires... 700011 does say services, surgical services, but that doesn't require on-call surgeons. That is correct, Your Honor. And elsewhere, it indicates that emergency room doctors with surgical training are perfectly adequate, right? Well, Your Honor, emergency room physicians... There's nothing in the record to state that emergency room physicians would be available to move over to the inpatient area of the hospital to service inpatients with surgical service needs. There's nothing in the record to suggest that. And in fact, the undisputed record... You only have a stipulation, but the secretary is not bound by the stipulation. But, Your Honor, the secretary's own agent agreed to the stipulation, and that's all that is in the record here. It's a contractor, and a contractor is not... Previous cases have indicated the secretary is not bound by the contractor's stipulation. So is it your burden to show that there were no doctors available? I mean, excuse me, the emergency room doctors wouldn't be trained? You know, unfortunately for you, I've actually been in one of these hospitals and had emergency room doctors do surgical work. I understand, Your Honor. But in this case, the hospital is entitled to... Once the hospital holds itself out in the state of California as offering, for example, a basic service such as surgery or a supplemental service such as pediatrics, perinatal care, or cardiology, the state, which happened here, the hospital must maintain continuous compliance with the supplemental service requirements. We do concede that the word on-call is not in this regulation, but what we've shown here is that the only possible way for the hospital to adequately meet the requirements of state law, which is continuous compliance, is by having the services of contracted on-call specialty physicians. Well, not true. The emergency room doctors are trained generally on providing a little bit of service for everything. Your Honor, each of those services requires that in that department, the hospital is obligated to have a physician responsible for the particular service. So your view is California requires on-call physicians in every one of these specialties? Your Honor, in this case, what we're saying is that California law requires these specialty physicians to be available. And as the undisputed record in this case shows, the only possible... That's not true. Are anybody trained in services? You don't have to be an obstetrician to be trained in certain emergency situations? Even in the perinatal example, that the hospital must have somebody trained in that specialty overseeing someone who may just have some training in that specialty. Where do you see that? So, in 70549 is the regulation governing perinatal unit staff. And it says a physician shall have overall responsibility of the unit. So that unit is not the emergency outpatient emergency department, which is a completely separate area of the hospital paid under a different cost center. The physician shall be certified or eligible for certification by the American Board of Obstetrics or Gynecologists or the American Board of Pediatrics. If such a pediatrician is not available, a physician with training and experience in pediatrics may administer the service. Yes, but a physician with the above qualifications, meaning the qualifications of the American Board of Obstetrics and Gynecologists or the American Board of Pediatrics, shall provide consultation at a frequency which will assure high quality service. And that individual shall be responsible for providing continuous obstetric pediatric anesthesia laboratory and radiologic coverage. So the emergency room doctors have to be periodically trained? Your Honor, the emergency room doctors would not be available to have overall responsibility for a unit of the inpatient side of the hospital. They have to be available 24-7 to service the emergency room physicians. But Your Honor, the issue here is that... Can I ask another question? Yes, Your Honor. What about the government's position that even if you were right on the second question, which I doubt, but even if you were right, the government has the ability to determine whether it's necessary and proper before you ever get to that issue. And that's, don't we have to defer to the secretary on this? Yes, Your Honor, we agree that the secretary is charged under the regulation with determining whether the costs were necessary and proper. Our argument here, the central focus of our argument here, is that the decision of the PRRB did not opine on whether the costs at issue were necessary and proper under the correct and applicable regulation at 413.9. Instead, the sole reason the board gave was that as a matter of law, 42 CFR 413.70B4, a regulation found only under the outpatient setting, a regulation that explicitly provides for Medicare reimbursement for critical access hospitals for on-call costs in the outpatient emergency room setting only. The board said that would clearly exclude the on-call services performed in the inpatient areas of the hospital. And the board said in conclusion, yes, Your Honor. You're asking just for a remand for the board to make that determination or are you more aggressively also asking that we reverse outright on that point, on the necessary and proper point? Your Honor, we believe that the factual, the record here that it's been stipulated to by the parties demonstrates that these costs were necessary and proper. So we are asking the court here to remand and order that these inpatient costs must be reimbursed, but remand to the secretary for the calculation of those Medicare payments that are due. Can I ask you maybe a really basic question, but does an emergency room physician have to be a surgeon? No, Your Honor. I anticipate, Your Honor, that like most medical students, and my apologies, this is not in the record, but my understanding is that medical students do rotations in surgery. No, but emergency room doctors have surgical training. I've been treated by an emergency room doctor in a surgical situation. Yes, Your Honor, I'm concurring with your statement. They do receive surgical training, Your Honor. Well, isn't that all that's necessary? No, Your Honor, because under California law and under federal law, which requires following state laws on things like licensure and including facility licensure and physician licensure, the inpatient departments, including surgery, which is a basic service in California for general acute care hospitals like this hospital, that department must have coverage by a surgeon. There is nothing in the record to show that an emergency room physician could be moved over to the inpatient side to care for patients and then abdicate their duties on the ER. Yes, Your Honor. Coverage by a surgeon or coverage by, it's a very counterintuitive concept to me, but a doctor who is not a surgeon, but close enough in order to do some surgeries. Your Honor, I want to speak very precisely to this. Okay. I believe it's in the addendum on 44. Okay. And that is, in fact, what happens in the ER, then it does seem like one possibility would be you have those docs do the double duty and they do the surgeries in the ER and they do the surgeries, the inpatient surgeries. Your Honor, I want to return first to your question about what's in the state law. Correct. So, for the surgical service staff, this is at addendum 46, section 70225. A physician shall have overall responsibility for the surgical service. This physician shall be certified or eligible for certification in surgery by the American Board of Surgery. It does say if such a surgeon is not available, a physician with additional training and experience in surgery shall be responsible for the service. But one or more surgical teams, this is at B, consisting of physicians, registered nurses, and other personnel shall be available at all times. It just strains practicality and it strains the sort of very nature of a hospital where, as you may well be familiar of the Two Midnights case, the Shands case, you know, we've spent, this court has experienced years of litigation on what it means to be admitted as an inpatient. It is, you know, unique in the statutory language. It's unique in the regulatory language at issue here. It's paid under a separate payment program with a separate calendar of federal, yearly calendar of federal regulations here. So, I can't stress enough how different the outpatient side, which includes the emergency department, is from the inpatient side in the Medicare program. And here, it's saying, under California law, that a surgical team that includes a physician shall be available at all times for the surgical service, which is on the inpatient side. Or someone trained. Yes, Your Honor. Where do you mean, where do you find the requirement in California law that a surgeon be available on the inpatient side? Tell me where you find that. Well, in this section here. Where, show me where, just read the line. Oh, sorry. In A or B? So, A is discussing the physician's qualifications for overall responsibility, but B is explaining. So, let's just start with A and then go to B. And hopefully, because you might have two different theories here, which I'm trying to unpack. A says, gold standard is the board certified surgeon. And if you can't get that, you can be in compliance with the rule by having the next best thing, which is a physician with additional training and experience in surgery. I read that as meaning you have to have a surgeon. He might be just out of medical school and not yet ready for board surgery, but still a surgeon. Am I overreading that?  The other thing I would stress is that I think that this provision is also saying that it shall have overall responsibility and be responsible for this service. So, this is surgical service staff. That's what this section is pertaining to. So, the language I just read to you might or might not support you for the reasons we've been discussing. But then I thought you were quoting us a different provision, maybe in B, about a surgeon or surgeon-like doctor with the supervisory responsibility. So, walk me through that. Well, I had previously was discussing the perinatal unit staff. Let's talk about surgery. Okay, yes. So, on surgery, what I was discussing is that the provision at B explains that that surgical team, which also does include nurses and other medical personnel, must be available at all times. Surgery in the state of California is a basic service. The hospital's been around for 70 years. It's had its critical access hospital. Who has to be on that team besides, at a minimum, the physician with additional training and experience in surgery? Your Honor, the regulation here states that it must consist of physicians, registered nurses, and other personnel shall be available at all times. That doesn't really push the ball any further than the debate we've been having about A. No, Your Honor, but in terms of the physician qualifications, I agree that it does not speak more specifically about the physician qualifications. But what it does say is that the physician must be available at all times for the surgical service. And that is the surgical service on the inpatient side of the hospital. So, it is impossible to have continuous inpatient surgical coverage and then say that those physicians could be physician in this. Where does it say inpatient in 70225? Your Honor, you're correct that I don't see the word inpatient, but this is a separate section of the regulations that it's separate from emergency department coverage. So, and it also is a separate when a hospital is licensed, it's licensed for things like surgery, which are in a separate piece of being licensed for having an emergency department. And this hospital, as a general acute care hospital in California, which it had that license well before it became a critical access hospital in 2005, one of the basic services is surgery. Why would it not work for the ER docs to be available for the inpatient? I mean, yes, let's assume we agree with you that the inpatient surgical department is an administratively and legally separate part of the hospital from the outpatient or non-inpatient ER. But, and they're still on the same campus. The physician who is physically present at one of those will be within whatever, a five minute walk of the other. So, why isn't that a plausible option for the hospital to satisfy state law? And yeah, you know, it may be that if the physician is doing an operation in the ER, he's unavailable to do an operation in the inpatient section of the building. But that's no different from the doctor is doing a surgery on one emergency and for that time unavailable for the next person who walks into the ER. Your Honor, we're not, we haven't, it's not part of the record, the issue of whether there were ER physicians available to service inpatients. But the issue, the undisputed issue in this record is that in order to service inpatients, which is necessary under both federal and state law. The undisputed record said that the only way this hospital could practically service the needs of its inpatients was to have on-call physicians. I understand. The problem is only to stabilize under the federal law, right? To stabilize patients who come in through the emergency room, make sure they're stabilized. Because this hospital is not supposed to keep people more than 96 hours on the average. And so if there's serious surgical complications, they would have to be transferred to a bigger hospital. So all the emergency room doctors are trained in stabilization. Your Honor, so to your point, I think you're discussing here the EMTALA, the Emergency Medical Treatment and Labor Act. And the issue there is that the state, the hospital must either, it does not require, first of all, the EMTALA does not require hospitals to transfer a patient once the patient is stabilized. It's not required, but it could be anticipated. It could be anticipated. Your Honor, absolutely. EMTALA does anticipate that if the hospital is unable to stabilize a patient, that it could transfer a patient. But here, Your Honor, there are a couple things in the record that speak to the fact that this hospital should be servicing inpatients. One is that the Secretary's own regulations state that the Critical Access Hospital Program was established to improve access for rural residents to essential healthcare services, and particularly hospital services. Hospital and services include acute care inpatient services. And when critical access hospitals do not provide them, this is the language of the Secretary, the individuals residing in that rural community may be at risk. We believe it is not in the best interest of a critical access hospital's beneficiaries to be routinely transferred to a more distant hospital if instead their care could be provided locally without compromising quality. And here I might add that the closest tertiary hospital, meaning a hospital with more advanced care, is over an hour away. And this is over mountainous terrain, two-lane roads that sometimes get closed down by mudslides. Are helicopters available in emergency situations? Well, my client has said to me, yes, I understand, Your Honor, but they have explained to me that a helicopter is not always available. So, Your Honor, I don't think it is fair for a hospital that is required to furnish inpatients under the Medicare conditions of participation to then say, we are trying to prevent you from servicing those inpatients. The Secretary stipulated the PRB adopted the stipulations that stated the only practical way that this hospital could service its inpatients was to have a contract. What about your contract? Don't you have a contract for more services than you're claiming you're required to provide? What is your contract? I'm sorry, Your Honor, do you mean the contract? You have a contract with a medical organization to provide doctors. Your Honor, the hospital has contracted with various on-call physicians, yes. No, no, no, you have a contract to provide doctors in emergency room, don't you? The hospital also has contracts to provide emergency room physicians. That's not part of the joint appendix here, but those are separate contracts to provide emergency room physicians. Well, and they're pretty extensive. It seems to me I saw that in the briefs. Isn't that correct? What are you providing? You have contracted with an organization to provide doctors, right? We have contracted with an organization, my understanding is, to provide emergency room physicians, but that's not the costs that are at issue here. We have contracted also and provided an example contract of one of these on-call specialty physicians. We've contracted directly with physicians to provide specialty on-call services. Yeah, and you actually have them on staff, don't you? Yes, Your Honor. So why do you need on-call if you have them on staff? Oh, I think we're using different terminology. So what I'm saying is that the hospital could not staff it. So, Your Honor, physicians are only paid, and this is not at issue in this case, I want to be very clear. The costs that the hospital has requested and sought reimbursement for here are not for the professional services rendered by these on-call physicians. That is paid under a different payment regime, and the physicians would independently bill for any services that they provide. What these costs are for is to have a physician who's not working elsewhere at the time that they are on-call be on-call and called in and be able to arrive at the hospital in a certain amount of time to service inpatients as needed. How many doctors do you have on staff? Your Honor, I do not know the answer to that question. How can you not know the answer if you're arguing the case? I don't understand that. Well, Your Honor, it's not part of the record of this case. I could certainly follow up with a supplemental letter. Who has the burden to show the circumstances? Your Honor, we believe that the record has shown here, and certainly the Secretary has the burden to analyze whether the costs are necessary and proper. We have provided documentation. Medi-Cal has also analyzed these costs and determined them to be necessary and proper. And the reason that is meaningful is because the Medi-Cal program, the Medicaid agency in California, is both familiar with state law and, in this case, applies federal regulatory provisions. It applied for 13.9, analyzed the costs here, and found that these costs were necessary and proper for this hospital to incur. But is the question whether they're necessary and proper a question for the Secretary in the first instance? Yes, the Secretary is. It's the Secretary's burden to analyze. If the Secretary concludes they aren't necessary and proper, then we don't even have to get into whether California requires it, right? Yes, Your Honor. If the Secretary were to analyze, that's all we're asking for here is that the Secretary should have analyzed whether these costs were necessary and proper. We've offered arguments as to why they are, including that the hospital is required to incur these costs under state laws in order to service its inpatients. There are Medicare conditions of participation that also require furnishing services to inpatients in a critical access hospital. No, but the government is arguing you don't even get into the question of whether California requires, which they don't think California does require. But we don't even get into that question if the Secretary concludes it's not necessary and proper. Your Honor, all we have asked for here is that the Secretary do the analysis of whether the costs were necessary and proper. The factual record below in the PRRB shows that the PRRB did not analyze whether these costs were necessary and proper. In fact, the PRRB decision below had two issues in it. One was this issue of on-call costs. Another was whether outpatient meals to patients were payable. In the section on on-call costs, the Board never referred to or discussed Section 413.9, whether the costs were reasonable, necessary, and proper. It did not discuss any of that. The PRRB's analysis relied solely on the inapplicable, facially inapplicable regulation at 413.70b4. And the PRRB found these costs unallowable under that regulation by negative implications. In the same decision on the next page, the PRRB's analysis discusses and rests its analysis entirely under 413.9. So the PRRB was well aware of 413.9, used it to decide whether the outpatient meals were allowable. They found actually that those meals were allowable, reversing the Medicare contractor. And they quoted the language of 413.9. So we think it is undisputed that the Board applied the wrong regulation in this case. So there's nothing, the adjudication was on the wrong grounds. And that's what we're saying here. So yes, Your Honor, I agree with you that it is the Secretary's burden to analyze whether these costs are necessary and proper under 413.9. I didn't say it was the Secretary's burden. Oh, excuse me, Your Honor, that the Secretary should analyze these costs as to whether they are necessary and proper. Didn't the Secretary or the PRRB say it doesn't matter whether California law requires, effectively requires on-call coverage? Yes, the Secretary, excuse me, the Board said that even if the Board could confirm state licensing and certification rules requiring these specialty physicians, state laws that, quote, conflict with clear federal Medicare payment regulations would not change the outcome of this appeal. Okay, so then there's really nothing for us to remand. They've already said that they don't think payment is necessary and proper, even if there's a state law obligation to have on-call services. And we review that and we either uphold it or we reverse it. Respectfully, Your Honor, in that section, the clear federal regulation that the Board is referring to is 413.70B4, which is found only in the outpatient section of the critical access hospital payment regulations. It's also found only in the outpatient statute pertaining. You're arguing against the negative implication, aren't you? Yes, yes, Your Honor, we are arguing against the negative implication here because there is an explicitly applicable regulation on point, which the Secretary did not apply in this adjudication. In addition, the negative implication here was not promulgated through notice and comment rulemaking. Oh, wait a minute. Wasn't it in the preamble? Why is that not promulgated? Your Honor, that statement in the preamble of, I think you're referring to the 1998 final rule that established when critical access hospitals were established. It was in the context of discussing outpatient costs and emergency department, specifically emergency department costs. It was not promulgated in a proposed rule, so there was no notice. And then there was a comment from a commenter about the use of locum tenens, which are substitute emergency department physicians. And CMS stated the standby costs of emergency room physicians who are present at the emergency room are allowable costs and be taken into account in computing Medicare payment. However, Medicare does not recognize costs of on-call physicians as allowable costs of operating a critical access hospital. However, that single sentence was in relation to the comment on the use of locum tenens physicians in emergency departments. Moreover, in the later regulation that was the Federal Fiscal Year 2002 final rule in 2001 after Congress in 2000, presumably having read this and also understanding that the emergency department regulations and statutes pertaining to critical access hospitals are very specific and particularly onerous for hospitals. It's 24 hour a day coverage in the emergency department. And so when pressed and also following this statement in this preamble statement, Congress came back and revised the outpatient, again, only the outpatient side of the critical access hospital statute and said, we will. Actually, they said that the secretary shall reimburse the costs of on-call emergency department physicians, but that's because they were looking at a specific issue pertaining to emergency department physicians. And even there, the secretary summed up by saying that in that rule that the permit the reasonable costs of critical access hospital outpatient services to include the reasonable compensation related to emergency room on-call physicians. There's no notice there that it had anything to do with reimbursement for inpatient physicians. I see your honors that. I want one more question. Oh, just quickly. Just quickly. One more. If we're done with the surgery point for the other services at issue. Where, where do you get the proposition that state law requires you to have whatever an OBGYN or, or cardiology unit inpatient unit. Yes, your honor. So, for perinatal pediatric and cardiovascular services, once a hospital is approved by the state to provide that supplemental service, which is what happened here. The hospital under this is under section 70307 must quote maintain continuous compliance with the supplemental service requirements. Those supplemental service requirements obligate a physician, a hospital to have a physician responsible for the particular service. I understand your honors as we talked with about in the perinatal section already as an example that there are some provisions in there. The language says that there may. It may permit physicians with different kinds of training, but, but the main condition is that there must be a physician overseeing it. And especially with respect for perinatal, it must be a physician with that additional training and certification must oversee. I understand that I was getting at a slightly different point, which is that the regulations, they seem a little bit different in so far as they affirmatively require hospital rural hospitals, like your client to have an inpatient surgery department, they do not affirmatively require these other inpatient departments. Which would seem, it would seem to make the on costs much less necessary. But your honor went once a hospital holds itself out and again, this hospital has been there for 70 years, and it's had an obstetrics department for that time. And on its license, it's hospital license, it's licensed to have these perinatal beds. And so once it has held itself out to the community, again, a community that doesn't have a hospital, you know, nearby two lane roads mountainous terrain, then it must continuously provide that service. So our argument is that once. Yeah, yes, your honor. You know, I still don't understand why you keep saying the surgeon is required to be on call. It says if such a surgeon is not available, a physician with additional training experience in surgery shall be responsible responsible for the service. Now, why can't that a emergency room doctor, and I cannot imagine anything that emergency room doctor would know more than surgery. Why, why isn't it sufficient if he or she has training. Your honor, the issue is that the emergency room physician cannot go leave the duties that it is required to cover. Every hospital I've seen with such a situation is seamless between the emergency room, and the inpatient services and and surgery emergency room doctors will move right with a patient into the inpatient section. I don't understand why you are dividing it as if it was all. Your honor, there's nothing in the record to suggest that an emergency room physician would be available to service the inpatient areas of the hospital, and I understand patients from to stabilize sufficient, that's all that's necessary to stabilize them. That's what's necessary under M Tala, but it's required that a critical access hospital under federal law under the conditions of participation for a critical access hospital must furnish inpatient services. And what we're saying is, in order to meet that federal law and state laws for these for these specific services. This hospital based upon its location the lack of available physicians needs to do so through on call coverage arrangements. That's the only practical way it can meet its legal obligations to provide these services. I have no further. How do you respond to the to the waiver argument on page 27 of the of the Secretary's brief on this point. Your honor, I, the issue of whether we, we waived our, our right to argue payment for the on call. Your honor, I, I disagree that we waived that argument, we discussed all of the services but focused on surgery, because of the language of it being a basic service and it had, and of course we also provided the contract of a surgeon. So we focused on that as an example but as we explained also in our reply brief, the supplemental services, we provided additional background on the supplemental services in our reply brief. And those supplemental services once a hospital has elected, or needs to to service the community, it serves offers those services, it's. And again, as I said, it's on the hospital's license that it offers these services, then it needs to provide continuous coverage for those services. So no, your honor, we do not concede that we've waived argument with respect to those specialty services. All right, thank you. Any other questions just catches such Silberman. One question, how many doctors do you have on staff. Your honor, I'm sorry I do not know the answer to that question but I will certainly speak with the client and and can bring and can send a letter to the court on that question. And I just to clarify, are you saying doctors that are not servicing the hospital through on call arrangements but are servicing the hospital through different means is that what you're asking on staff. Okay, these, these physicians are on staff, it's just that they're on on talking about those who are permanently connected. Well, I think the issue is that this hospital has difficulty providing these specialty services. Again, the way critical access hospitals are as you pointed out your honor. All I'm asking is how many doctors are on staff. Your honor, I do not know the answer to that question but I'd be happy to find out for you, your honor. All right, thank you counsel will give you some time on rebuttal. Let's hear from Council for the Secretary. Kyle Edwards. Thank you, Your Honor, and may please the court Kyle Edwards on behalf of HHS. Given that much of the discussion has focused on the surgical services requirement under California law I think it'd be useful to start there. First I want to point out, if you're looking at the surgical services staff language at 70225 section 70225. What it's talking about here is a physician who will shall have overall responsibility for the surgical services, this is the person who is in charge of the surgical services in the hospital. It's not referring to the doctor that needs to provide that's providing care directly to a patient. And as the so that's one problem I think with the argument that there needs to be on call physicians under under this particular section. The second is, as the board pointed out, and this provision specifically allows for a doctor that does not have the special credentials but just has additional training in surgery to to fill the role of that. That physician who provides overall responsibility for the surgical services. So again, this is the person who's providing who sort of running the the surgical unit, not the doctor that's providing sort of hands on care necessarily at every given point. And another problem with the surgical services argument that. Why did we move on, why does that matter. Because the argument here is that there needs to be an on call doctor who's able to come in, based off of this California regulation. And what this regulation is actually referring to is the doctor, you know, the head of the surgical wing, for instance, and this is not sort of about this is not talking about the doctor that has to be providing care at any given time. So that's the overall responsibility services language. Yes, I'm not sure why that matters. I mean, we're struggling or I'm, I'm struggling because you have a state law requirement that they have to have an inpatient surgery department. And you have stipulations that the only way they can staff up what they have to staff up is through on call arrangements. And where does that leave them. I mean, it seems to me. Whether you're talking about the supervisor or the doctor who does the surgery, you put those two points together and seems like on call costs, at least for surgery are pretty necessary. With, with this possible exception of maybe the ER doc does double duty and I just I have no idea how to assess that because it's just the record is not developed on that point one way or the other. So I think one thing that might address this concern entirely is that the California Health and Safety Code actually says as we, as we say in our brief that a rural general acute care hospital does not need to provide surgical services. So in addition to, you know, this, this particular provision 70225 not requiring on call surgical services. There's actually provision in California law that says that rural general acute care hospitals do not need to provide surgical services, and in response in their reply brief St Helena doesn't take issue with that. That's 12508. Yes, that's correct, Your Honor. And there's been. I mean that wasn't the ground of decision below either by the board or judge Nichols right. It's correct that they did not cite that particular provision, the board said generally that the provision, the provisions that the provider cited to didn't require an on call. The rationale below is that it doesn't even assuming there's a state law requirement. They don't have to. It's not reimbursable under Medicare because of the negative implications, and the necessary and proper. There are. Yes, there are alternative grounds. And so backing up, you know, even if, again, I don't think it's inappropriate for the court to consider that the California law actually doesn't require these hospitals to provide surgical services given that that's the primary argument, they're making here and given that they don't rebut that in their reply brief they just say well we do decide to provide surgical services. And so, California law licensing law, just simply doesn't require them to provide surgical services it doesn't require them to provide these supplemental services which is I think why they focused in their opening brief on the surgical services. Now, on the supplemental I'm just I'm worried about the surgery. The seeming requirement in. What is it, I guess, 705 and 7011. So, you know, if you ignore 1250 a in the health and safety code, and you're just looking at 70225, as the board explained this just talks about sort of the ideal qualifications, and it says that someone with additional training in surgical surgery can fulfill that role. And as was discussed earlier during the argument, and there are the record does reveal that St Helena has emergency room physicians available 24 seven, and the board found that if an inpatient had an emergency that required them to be stabilized that those emergency room physicians would be able to handle that that issue and and the contracts. And if you look to the contracts with Jansen and Jansen, they actually say that those those physicians need to be able to handle unexpected emergencies any any unexpected emergencies. So those contracts. To rule for you on this point. Do we have to effectively include that the stipulation is wrong, at least as applied to this question of surgical services. There are multiple bases. So, you know, I think the board also said that even if this was required by by California law, for instance, that wouldn't necessarily mean that Medicare would be paying for it you know there are all sorts of things a hospital might be required to do by, by, by, by state or federal law and that doesn't mean Medicare is going to pay for for every single one of those things. In terms of the stipulation, and that stipulation does not bind the secretary who is not a party before the board was a stipulation between the hospital. Okay, fair, fair enough, but what's what St Helena supposed to do they have a burden of proof. They have to show for necessary at a minimum they have to show there's no other way let's let's assume they have to show there's no other way they can staff up the hospital, and they get a stipulation that seems to cover that point. Let me what what what more could they have done that they have to ignore an offer of stipulation and and litigate out something that the person on the other side of the V is willing to concede at that point. So, you know, at the very least thing to be able to point to something in the record that would support that stipulation and and they haven't done that they've never pointed in their briefs to anything. That's the point of the stipulation. Yeah, anything in the support it because the other side agrees to it. Okay, so the stipulation arrived arose later so there's hundreds of pages in the record. Obviously, the stipulation arose just before the board. And so there was plenty of opportunity and indeed the position papers below include I think exhibits one through 50 from the provider the sort of initial position papers. And so there was opportunity to introduce this and it's not a, you know, let's assume Council, the stipulation remains. What is your position then. Well they are attempting to rely on the stipulation as if it was let's assume we accept the stipulation. And what's your position. The position is that Medicare, Medicare is not required to cover everything that a hospital might decide it, it wants to provide Medicare is responsible for covering the provision of services to Medicare beneficiaries and it's, it's interested in the efficient And so, you know, when you look at the stipulation requirements for critical access hospital and you look to what Congress was intending and creating this, it was trying to prevent the closure of these rural hospitals to enable there to be 24 hour 24 seven emergency. So I'm just asking for your legal position. If the stipulation were to be accepted. If the stipulation were to be accepted it wouldn't change anything. Again, the board. Why, the board said that, um, you know, even if, for instance, California law required them to do this and they needed to, they, they thought they needed to have these physicians to staff their units and requirements of California law would not determine what Medicare stipulation doesn't the stipulation. If I understand the argument doesn't go to California law so much as the practicality of whether it's necessary and proper. The stipulation says because of the rural nature of the service. The provider must pay doctors for being on call during set hours which is the only practical way the provider can adequately staff its hospital with the doctors necessary to serve patients. Again, that's not really a factual stipulation that is a legal conclusion that these costs are necessary and proper and our position is that they were not necessary and proper. The board found that based on the, the conclusions that it drew with respect to California licensing law and and Tala, and that given. Okay, if it's if the stipulation is true. But it's the only way they can provide surgical services. What is that what is then the government's position that they are not required to provide surgical services by federal law and they are not required to provide surgical services by state law, and that the, the purpose of these critical access hospitals is to provide 24 seven emergency care services, and they do require inpatient, and they do. They are required to offer inpatient services but that can be provided by a nurse, so there doesn't even need to be a physician available at all times at these hospitals, they're, they're very limited service 2025 acute care beds or less 96 hours per patient inpatient, on average, and it is simply not consonant with the nature of these critical access hospitals that they would need to have on call surgeons. In addition to the other on call doctors. I'll also note, just as a practical matter, they're trying to get on call coverage costs for perinatal and pediatric services. It's a little unclear how that relates to Medicare which covers persons that are 60, for the most part covers persons that are 65 and older, there are some exceptions to that for younger people with disabilities. But I think that what that gets to is that the hospital here is really trying to get Medicare to pay for services that are just not what are necessary and proper under in view of the nature of a critical access hospital. So suppose, suppose we think the following and I know I know you reject these premises I'm just trying to think through the decision tree here. Okay, point one, California law does require this hospital to have an inpatient surgery department. Point two, we accept the stipulation and read it to say that the only way this hospital can staff up the emergent inpatient surgical services that they're required to provide is to have on call arrangements. If you get to that point. And then you have the overarching federal requirement is that the services be necessary and proper. You're right that not every legally required service under state law might be compensable but if you have the general obligation to the general rule is reimbursed if necessary and proper. And you can't point to any specific exclusion under federal law. We get that. Why might we then still think, oh, but this might not be necessary and proper. So I think, you know, the board. Again, I just want to note that we disagree with those premises, but taking them as as true the board did say that, you know, even if California licensing law required this result. So accepting the I think both of those premises, and it still would not mean that Medicare would be required to cover those costs, there's still an independent determination of whether the costs are necessary and proper. And the board made that determination in addition to rejecting sort of the California law argument it rejected the and tall argument. It said that, you know, if you're if you're thinking just about the practical situation of this. I'm not worried about him. I'm not worried about him at all. I'm just positing a state law obligation to have a surgery, surgery department. And I think that's their best. I see. I mean the provider is not pointed to and they repeatedly point to the rule that, you know, the general requirement that a hospital has to comply with state and federal law. They haven't pointed to anything saying that that requirement means that Medicare is going to provide payment for complying with the requirement. And so I think I think that they haven't sort of totally closed the circle on that argument with what they've given so far. Okay, I understand the position. Thanks. Thank you. I'm happy to answer any remaining questions that the panel has. I'm judge catches Judge Silverman. I'm also no more no more. This counts. All right. Thank you. Council, we will give council for the panel, we'll give you two minutes in rebuttal. Question right at the outset. How do you respond to count your, your opposing councils comment that the stipulation is not really a stipulation of fact, but it's really a question of mixed fact and law. Your Honor, or even law. Your Honor, the stipulations here are our stipulations of fact, so it does not say necessary and proper, it does not say this says that is the only way we can do this. But that is a, that is not really a classic factual determination is it that goes into all kinds of legal questions. Well, Your Honor, I think it here it is a factual determination because the hospital is not able, it would be extremely expensive to have. Uh huh. So it'd be expensive, more expensive. No, no, I'm sorry, Your Honor. I, what I'm trying to speak to is that this is an efficient way to deliver services here as as council across the aisle pointed out inpatient, the inpatient area of a critical access hospital has a fluctuating census of patients. So it makes sense, this is precisely the kind of hospital that is best service by on call specialist physicians, when there's surgery that needs the inpatient surgery that's scheduled, then, then those surgeons can be brought in from the on call coverage that that's precisely what, what type of hospital needs a rural hospital like this needs on call coverage, but I want to return to that. And, but to Your Honor's point, these stipulations here are factual. It says the provider must incur the cost at issue to compensate area physicians for being on call rather than physically present in the hospital. It needs to meet the needs of hospital patients who are admitted into the inpatient area of the hospital. And, and by the conditions of participation as well excuse me that the physicians must be present to service inpatients in the inpatient areas of the hospital but I want to return to the point about whether the board here analyzed the, whether these costs were necessary and proper. The board did not do so. It did not analyze, as, as Congress intended and Congress requires to be done, whether these costs are necessary and proper under the relevant statute and the relevant regulation which is for 13.9. Instead, the board applied a facially inapplicable regulation, the district court affirmed the PRB's decision on this point that 413.70B4, which applies only to on call costs and emergency department applied by negative implication. And, and thus, the board here when it says that, that the, that even with that, regardless of what state law says it would fail, it would fail because of what it's saying is 413.70B4, which is just, which is incorrect as we have explained in our papers. Suppose the regulation had been explicit rather than the government's argument, a negative implication, a race, the Latin phrase. I was going to say race, if they're local, it's the wrong Latin phrase. Suppose the regulation had been explicit that on call for inpatient, is this allowed? What would your view be? Your Honor, if that had been done through notice and comment rulemaking, as is required under the statute, the Medicare Act of 1395HHA2, then we would have to, we might have to concede that these costs are not allowable. But that was not done so here. This was not issued by notice and comment rulemaking. This regulation does not speak to whether. The regulation was issued by notice and comment, wasn't it? It doesn't speak to the, it has nothing to do with inpatient costs, Your Honor. That's your argument. That's your argument. But you concede that if it had been explicit, you'd be out of court. That if a regulation explicitly prohibited the costs of inpatient on-call costs, would we be precluded from making this argument? Is that your question? You already answered it. Yes, Your Honor, if done through notice and comment rulemaking. All right, counsel. Thank you, counsel, for your arguments in this case. I take the matter under submission.
judges: Wilkins, Katsas, Silberman